Good morning may it please the court I'm Richard Stevens representing the Emery's and I'd like to reserve three minutes for rebuttal. I believe at the heart of this case is really whether or not stop work order cease and desist orders essentially administrative determinations about the Emery's property can be the basis for a criminal prosecution even though those orders were issued without due process. As to the due process issue... Let me ask you a question about that my impression is that these cease and desist notices whatever they are are basically the equivalent of a citation that are issued and if you don't agree with it you can administratively appeal it and take it from there is that is that right? That is not right they clearly have that function that you could take an administrative appeal but they are determinations about and orders that my clients stop doing things. But if you don't if you don't agree with it you can immediately get an administrative appeal and they're on hold until the until the thing is resolved is that right? Well I don't know if it's on hold but there is an administrative appeal. Is that any different than if a cop says I think you ran a ticket here's a citation go tell it to a judge I mean I don't see how that's any different. Because that is a process that that essentially requires that you go into an administrative quasi judicial proceeding. I don't have to. Well or suffer the consequences. Our position is that this is almost exactly on point with the Weinberg versus Whatcom County case where the court indicated when you're when you're that they have a right to do you have to have prior notice at an opportunity to be heard. I don't understand why you can get to first base in a federal court with a client who didn't exhaust the available administrative remedies. Because the exhaustion requirement does not apply to any of the causes of action which he's Why wouldn't it? Well as we said in this the Emory's in this case they got this order saying you need to stop doing this. The Emory's position was I've stopped doing it. And then finds out later years later that he's going to be criminally prosecuted for that. Well didn't they make a deliberate decision not to pursue their administrative remedies as a matter of principle? Well no I think on there's really two bases and two categories of administrative orders. The one was sort of the earth-moving kind of materials where he's grading and those kinds of things. Clearing trees that kind of activity is part of his agricultural activities. And his position as he stated in his declaration I stopped doing that. That's why I didn't appeal and I thought we could work this out. The other category was the operation of his trucking business. And the operation of the trucking business he did not stop. He continued. He was convinced that that was legal non-conforming use. Okay so he had in his own mind he was entitled to do it. But he had a notice saying you can't do it. And he made a considered judgment not to not to pursue the the administrative appeal if I understand correctly. Is that right? That that's right. Well what's the consequence all Well your honor our position is that race judicata does not apply or collateral estoppel. This court uses state law and as we indicated in our citation to supplemental authorities. The Washington Supreme Court has said in the Shoemaker case you can't apply collateral estoppel to a to an administrative decision unless it was done in the context of a quasi-judicial hearing. You can't just have a in the case of a citation you can't just have the citation and say that is a verity for purposes of a criminal prosecution. The citation operates like a letter from the zoning authority saying you're doing something in violation of the zoning law. Stop doing it. And if you if you disagree with that there are multiple steps you can go through to show that you're right and they're wrong. Your honor if if the if that's all it did if all it did was say is put somebody on notice. That isn't just a notice the letter I described says stop doing it. That's right and that's why our position is is that Weinberg versus Whatcom County is right on point. That's exactly what he was saying. Euclid versus Ambler was right on point actually. People have the land in the family for around a century and civilization has grown around it and it's been zoned in a way that they can't use it the way they used to. Well at one time people thought that might be a taking and Euclid v. Ambler said no. And in this case Pierce County like a lot of Washington jurisdictions have concluded that pre-existing non-conforming uses are allowed to remain so that the new zoning is not going to prohibit pre-existing zoning. Sometimes but as I recall these people were grading their land in such a way that it flooded a new subdivision that had developed nearby. Well your honor that that is subject the dispute that is the subject of the dispute here and we believe that when the trial court looked at the evidence on this the trial court essentially improperly weighed the evidence. The Emory's should have an opportunity to go to trial on whether or not they were you know in violation of these zoning ordinances or site development regulations. Well they had a brought up. They've had their day in court on that haven't they? Well they have not because the action was in fact dismissed. Well what are you complaining about? Complaining about the problem is that when the action was brought the county knew or should have known that it was a non-conforming legal non-conforming use that he had every right to be there and it wasn't until Just a minute though. The right to be there and the right to non-conforming use is not the same as say because you have non-conforming use if you start a certain kind of grading you don't have to get a permit. Does it? No and that's that's right the the the the essentially the trucking business was a legal non-conforming use but the grading work was part of an agricultural activity and that was exempt from the code that was their position still is their position. Well certain agricultural activities might be for instance like plowing or you know reaping or something but grading you know and changing the elevation necessarily isn't you know part of the ordinary agricultural use. It doesn't mean you don't have to get a permit for grading like everybody else. Well but that is not what he was accused of doing. Well that's what you were just complaining about. Well he was doing earth-moving activity but that is not necessarily changing completely changing the contours of the ground. What he said that I was he was prohibited from cutting down some trees. Those trees removal was part of his agricultural activity. It was part of his farm plan. They told him he had to knock it off. Yes. And you have a hearing if you want to contest it and he decides not to do that. Yep he says I'll stop and I'll try and negotiate with you. Well you don't I mean he's got the right to have a hearing and have an administrative proceeding if he chooses to do something else. Doesn't he do that at his own peril? But not to the point of the county being able to take a decision made by county staff that was not appealed and the mere fact that it was unappealed forms the basis of the criminal prosecution. That's not mere. The consequence of not appealing it is. I mean what would what would you think that the result of that is? You get a citation and they say you can contest it and he doesn't contest it. What would you logically think is going to be the result of that? That he's got to comply unless they they will agree otherwise. But it isn't necessarily a logical conclusion that you will be brought in with a criminal prosecution. He wasn't convicted of a crime. They dropped the prosecution. I don't understand why that keeps coming up. Because it was the criminal prosecution that went on for quite a period of time and that coupled with him being told that his non-conforming use rights would not be recognized and being told that he's looking at substantial jail time that he moved the business. He removed the business from the site. That was a reasonable under those circumstances that was a reasonable thing to do. And those are the consequences that the Emory's have suffered. That a criminal prosecution was brought was pursued and was maintained when the county knew or should have known. I'm trying to visualize the proper steps as opposed to what you contend are the improper steps. I'm thinking you have an ordinary suburban subdivision and somebody decides it would be amusing to have a pig farm. Pig farm stinks. Neighbors complain. Zoning authorities come and say you can't have a pig farm here. It's not allowed under the zoning. And they give them a citation saying stop the pig farm. Get rid of the pig farm. And it says right on it you can contest the citation. And he says oh I'm not going to contest it. That's ridiculous. Pig farm is heartland of America kind of stuff. It's good stuff. I'll just tell them and I'll drop it. And he doesn't contest it. He tells them how ridiculous they are and they don't agree and they don't drop it. And he keeps running his pig farm there. Why can't they take every remedy available, criminal, civil, whatever for him running the pig farm where it's not allowed? Your Honor, I think in that scenario and apply to this case you've got to look at the two categories of activities. One was running the trucking business and one was the work on the ground. He stopped the work on the ground. So in the pig farm analogy it stopped operating the pig farm. And hoping to get some resolution as to whether he had the right to continue to do this or not. His belief that he can negotiate this away, I don't see where it matters. Well, but Your Honor, I think the difference is the county could have. It could have said we think you are doing something illegal and we are going to have a hearing to make determinations about that. That's what I think this court indicated in Weinberg versus Whatcom County that if you're going to stop somebody from doing something, unless we're talking about emergency, you have to have that kind of a process before you make your determinations. So that's one category. And as into the trucking business, you're right, he continued to operate the trucking business at that point. But he had a defense which he told the county about the defense and there is nothing in the declarations of probable cause about the defense. I know you wanted to reserve some time. Thank you, Mr. Stevens.  Good morning. May it please the court, I'm Grace Kingman with the Pierce County Prosecuting Attorney's Office representing Pierce County and the individually named defendants from Pierce County Planning and Land Services. Thank you. Could you tell me why they don't have to tell him they're going to have a hearing on whether he has to stop doing something before they tell him to stop doing something? Are you referring, Your Honor, to the procedural due process claim that the plaintiffs raised? That's right. Well, with regard to the first three notices on that issue, or the first five notices on that issue, Your Honor, the statute of limitations have barred those from this court's review. With regard to the last notice, which was in 2007, the plaintiff indicated in his brief that that decision had no negative impact on him. It simply ordered them to do what they were always willing to do. So they haven't shown that they were deprived of any sort of a due process interest or any sort of a property interest with regard to the last order. And as I mentioned, the first five were already barred by the statute of limitations. But the orders themselves didn't do anything. I think this court has already noted that they sent them, it's in the form of a letter advising them of numerous penalties that they could be facing, the exact activities that's permitted, that they need to apply for a permit, and that failure to do so can result in additional penalties, both civil and criminal. It provides them with the information on how to appeal the administrative land use decision and the time frames that are required for that appeal. And Mr. Emery, in fact, never tried to negotiate anything with the county until after the criminal charges were filed. He testified in his deposition, and the district court judge duly noted that he repeatedly told county staff, I don't have to follow this and I'm not going to. And he did allow the wetlands biologist, Defendant Risvold, to enter his property for an inspection. But after that, he refused to cooperate with the county and didn't allow them onto his property and refused to comply with the notices and orders. All right, Ms. King. Yes. I want to focus a little bit on the inverse condemnation claim. Okay. Now, Judge Settles dismissed those on sort of procedural grounds, right? Yes. One was what? Like failure to exhaust? Correct. Now, tell me how exhaustion comes into an inverse condemnation claim. Well, it comes in primarily. Or why it's pertinent or relevant to, you know, an inverse condemnation claim. Primarily in this case, it comes in where the very basis of their claims are founded on what they claim to be the issuance of these erroneous orders. Those orders, in effect, deprive them of certain uses of their land, right? Well, they're saying initially they're saying that the wrongdoing on the part of the county that entitles them to relief is that primarily that these orders were erroneous and then secondarily that it deprives them of the use of their land. I'm talking about the secondarily part, no. Okay. So the secondarily, what you call the secondarily part, no, they were deprived of certain uses of the land. Why does exhaustion apply to that? In other words, you know, you can bring an inverse condemnation claim accepting that this is what the, in other words, it's really based on this is what the county did and that's what deprived me of my land use, right? Correct. What's wrong with that argument? What's wrong with that argument is that this is an applied challenge with regard to these land use regulations. And typically in an applied challenge, they have to show exhaustion of administrative remedies because there's a strong public policy that the local government who has promulgated these land use regulations should have the ability to decide what exactly the parameters of the land use regulations. That just goes to exhaustion. In a sense, they've exhausted their remedies because they've accepted, by not appealing, they've accepted the county's determination that, you know, this is what the ordinance means, right? And so that's the county's action that's being challenged. Why can't they do that? I don't understand. Well, they never did a facial challenge to this particular ordinance, but they're saying they're saying. It's an as-applied challenge, right? Right. And in the Presbyterian case, which is a Washington State Supreme Court case, they talk about the exhaustion of remedies and why it's important. And what they're saying is that these orders tell the landowner, you need to get a permit. And if you don't get it, if you don't apply for a permit and go through that administrative process, whether you agree with what the permit says or the permit is denied or it's only issued for outside the scope of what you intend to do, then you appeal that permit. And in that sense, the local jurisdiction has an opportunity to make a ruling as to what the uses are and aren't with regard to the land. Let me ask you this. Suppose Pierce County regulates in such a way that, in effect, takes away his land. Does he have a state remedy? Can he file an inverse condemnation claim in state court? Yes. And first, if he's claiming- Would he have to do that before he can come to federal court or show that there is no state remedy available? Yes, he does. And he has to seek compensation under the Fifth Amendment. It's not the taking that's the problem. It's the lack of compensation. And he never sought that. And he never exhausted that remedy. He never sought compensation. Correct. Correct. I'm missing a piece of this argument. Okay. I had thought, following along with the logic that Judge Tashima laid out for you, that you could accept, yes, I am indeed violating the zoning requirements, and that's why I'm not going to go through the administrative process of contesting. For example, the zoning requirement might be you may build nothing on your land. We want it to be open space. And you have to dismantle any structures on your land so that it will be open space that others can enjoy. And then it seems to me that Williamson would require you to sue for inverse condemnation in state court if such a remedy were available in state court. But I don't recall that we've had any mention of Williamson. I cite to Williamson in my brief, and it does talk about what I had just stated, was that they have to. So you are making a Williamson argument then? Yes. They do have to seek that compensation. But what they have always claimed, and their arguments have changed and taken different shape, and they've made a lot of new arguments on appeal that they didn't make initially. But in their complaint, they allege consistently that these orders were erroneous. These orders were improper land use decisions, and that's the basis for this entire lawsuit and all of their claims according to the amended complaint. Now, they've changed that, and they've tried to dress it up a different way because of the failure to exhaust the administrative remedies and the statute of limitations. But the bottom line is if you look at their amended complaint, that was always the basis for their lawsuit. And in Mr. Emery's testimony in his deposition, he testified that these people made errors, that they didn't read the code right, that they had it wrong, and that was the basis for the lawsuit. And then when it came down to summary judgment, he was unable to come forward with facts to support that position in any fashion. The majority of the other claims have been abandoned. The procedural due process claim was abandoned. The plaintiffs did not respond to that in their response to summary judgment. The same is true with their failure to train claim where they attempt to establish Monell liability against Pierce County for failure to train. They never submitted any evidence at any point with regard to what training the individuals at Planton and Ladd Services had obtained or had not obtained. And again, they just fully abandoned this issue by failing to respond to it on summary judgment. These issues, the failure to train and the negligence issue, inverse condemnation, malicious prosecution, those were all challenged, not only on the procedural bars, but also with regard to the inability for them to make a prima facie case on those claims in the form of a Celotex motion. The negligence claim was similarly abandoned. It was dependent on the underlying orders and notices being erroneous, which we have determined has been time barred. The malicious prosecution claim is one which, in their brief, the plaintiffs spend probably the most time on, and they claim for the first time on appeal that it's not only a state tort action for malicious prosecution, but they're also bringing it under 42 U.S.C. Section 1983, which is an alternative way of bringing a cause of action for civil rights. However, they never alleged that in their complaint. They never raised that in their response to summary judgment. They're raising it for the first time on appeal. In any event, that claim still fails because they can't show that the prosecutor lacked probable cause for the filing of the criminal charges, nor can they show that any of the county employees acted with malice in bringing these charges to the prosecutor's office and asking for criminal prosecution. In order to establish probable cause, they merely dispute the district court's finding that the notices and orders are verities at this point in time because of their failure to exhaust administrative remedies, and they dispute that by saying that collateral estoppel can't be used to support probable cause. But if you look at the notices and orders themselves, which the prosecutor relied on, they set forth plenty of facts in order to support the bringing of criminal charges against the Emrys for their failure to get their land in compliance. Plaintiffs indicate in their brief that malice can be shown by the lack of probable cause, and that's just an attempt to bootstrap two separate elements together. There is, in fact, no evidence of malice here whatsoever, and Mr. Emry testified to that almost in his ‑‑ he didn't reach that conclusion, but in his deposition testimony he indicated that he didn't know why anyone of these individually named defendants would have an act to grind with him or why they would deliberately try to harm he or his family, which is basically the crux of the malicious prosecution, that it's done for essentially an evil motive. And that was clearly not the case here. When the Emrys began the criminal prosecution, it wasn't until that point, which was over a year after the issuance of the first notice, that they began to actually cooperate with the county and supply information to establish their nonconforming rights for the trucking business. At that point in time, the criminal prosecution, rather than being maliciously pursued, was continued over and over again for the Emrys and the planning department to determine whether or not these nonconforming rights existed, and if so, to what extent, because the scope of the rights is a big issue, not just the fact that the business has been there for a certain amount of time, but it's been there a certain amount of time for what capacity in terms of the amount of room it's taking up on the property, number of employees, things of that nature. And the county issued its first letter acknowledging the nonconforming rights. And at this point, Mr. Emry did seek to exhaust his administrative remedies, and he did file an appeal. The record shows that the parties resolved the issue without having to take it before the hearings examiner, and a second letter was issued, and at that point in time, the criminal charges were dismissed because with regard to the zoning aspect, the property was then in compliance. So unless Your Honors have any further questions, that concludes my argument. Thank you, Ms. Kingman. Mr. Stephens, back to you, sir. Thank you, Your Honor. I'd like to first deal with the reference to Williamson County that came up a few minutes ago. This taking's inverse condemnation cause of action is based on the state constitution. We're not basing it under the Fifth Amendment nor under Section 1983, and so Williamson County does not apply at all. I'm sorry. I don't understand what you're saying. Williamson County. Your inverse condemnation claim is based on? State law. And did you pursue a state remedy? Yes, in state court. We were removed here by the county. So we brought a state court remedy to get compensation under the state constitution. Williamson County has no bearing on this case. In regard to the argument about the statute of limitations applying to the earlier orders, we would agree that we cannot seek relief under Section 1983 regarding those orders, but that does not mean the court cannot look at those orders or conclude whether or not they are sufficient to provide probable cause. And our position is that it is not probable cause, again, because of the due process problem, but also because there is nothing in them and there is nothing in the Declaration of Probable Cause that indicated that permits were required. We claimed exemptions. There's nothing about those exemptions. That's an essential part of the crime. The argument about Williamson makes sense, but it kind of brings us back to Euclid v. Amler. Well, Your Honor, I think that the we never really got to the facts, the merits of the inverse case. But if the court were to look at the merits, I think this case is a lot like Patel v. Penman or Armendariz v. Penman about where administrative orders were used to try and shut down a business. That really relates to the merits, and this court indicated that inverse may be the proper remedy. Here, the inverse was thrown out on two reasons, essentially rightness or a failure to exhaust, and our position is that in an enforcement action, and this court in Adam Brothers, as we cited in our brief, indicated enforcement action is one way in which you can determine how the government is applying regulations to property. It's not only seeking a permit. And the other basis for the district court opinion was statute of limitations, which is clearly 10 years, and all of the orders were within the 10 years, and the criminal complaint was within 10 years. Statute of limitations nor exhaustions are bars to the inverse condemnation case. Thank you. Thank you, Mr. Stevens. Ms. Kingman, thank you. The case thus argued is submitted. Good morning.
judges: Kleinfeld, Tashima, Silverman